**FILED**

JUN 2 8 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFERY RANK
5500 N. Braeswood Blvd, #209
Houston, TX 77096

NICOLE RANK
5500 N. Braeswood Blvd, #209
Houston, TX 77096

LESLIE WEISE
5587 Glendale Gulch Circle
Boulder, CO 80301

ALEX YOUNG
817 17th St #2005
Denver, CO 80202

       Plaintiffs,

    v.

GREGORY J. JENKINS
4094 Rivoli
Newport Beach, CA 92660

       Defendant.

Case: 1:07-cv-01157
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 6/28/2007
Description: Civil Rights-Non-Employ.

*JURY ACTION*

JURY TRIAL DEMANDED

## COMPLAINT

(For damages and declaratory relief – violation of First Amendment rights)

    1.    This is a Complaint seeking damages and declaratory relief for violation of the Plaintiffs' First Amendment rights. Defendant had the Plaintiffs removed from public events involving the President of the United States based on the content and viewpoint of Plaintiffs' speech.

1

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1346. This action is authorized and instituted pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) and 28 U.S.C. § 2201.

3.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3) because the events that form the basis for this Complaint occurred in this district and because there is no other district in which this action might otherwise be brought.

## PARTIES

4.     Plaintiffs Jeffery Rank and Nicole Rank were living in the State of West Virginia at the time of the events that are subject of this Complaint. They were formally residents of the State of Texas. They are now residents of the State of Texas.

5.     Plaintiff Leslie Weise is a resident of the State of Colorado and was a resident of Colorado at the time of the events that are the subject of this Complaint.

6.     Plaintiff Alex Young is a resident of the State of Colorado and was a resident of Colorado at the time of the events that are the subject of this Complaint.

7.     Defendant Gregory J. Jenkins was, at all relevant times, the Director of the White House Office of Presidential Advance and a Deputy Assistant to George W. Bush, the President of the United States of America. His office was in Washington D.C. The White House Office of Presidential Advance organizes and directs visits by the President of the United States to locations outside the White House complex in Washington D.C. Defendant Jenkins now resides in California. Defendant Jenkins is sued in his individual capacity.

FACTS

Plaintiffs Jeffery and Nicole Rank

8.    On Sunday, July 4, 2004, President Bush made a visit to Charleston, West
Virginia, in order to give a Fourth of July speech outdoors on the grounds of the State
Capitol. This was an official visit by the President. It was paid for by taxpayers. It was
open to the public.

9.    On July 3, 2004, Plaintiffs Jeffery and Nicole Rank obtained for their use
tickets granting them admission to the July 4, 2004 appearance of President Bush.

10.    Neither the ticket itself, nor the people who handed out the tickets, said that
persons attending the event would be excluded if they were critical of the President.

11.    On July 3, 2004, Plaintiffs Jeffery and Nicole Rank obtained copies of a
document titled "The Visit of the President to Charleston, West Virginia July 4, 2004
EVENT INFORMATION."

12.    This "EVENT INFORMATION" sheet included a map showing parking
areas and points of entry to the event. Neither this map nor any other information available
to Plaintiffs Jeffery and Nicole Rank showed any restriction of any kind on the location of
persons who wished to exercise their free speech right to express disagreement with the
policies of President Bush.

13.    After being admitted to the West Virginia State Capitol grounds to attend
the appearance and speech of President Bush, but well before the arrival of the President,
Plaintiffs Jeffery and Nicole Rank removed their outer shirts to display t-shirts containing
an expression of their disagreement with the policies of President Bush. The front of the t-
shirts of both Plaintiffs Jeffery and Nicole Rank bore the international "no" symbol (a

3

circle with a diagonal line across it) superimposed over the word "Bush." Both t-shirts also displayed on the left sleeve a small photograph of President Bush with the international "no" symbol superimposed over it and on the right sleeve a "Kerry" button. The message on the back of Plaintiff Nicole Rank's t-shirt was "Love America, Hate Bush." On the back of Plaintiff Jeffery Rank's shirt was the message "Regime Change Starts at Home."

14. The Rank Plaintiffs had no intention of disrupting the event and did not do so at any time.

15. As Plaintiffs Jeffery and Nicole Rank stood peacefully on the public grounds of the West Virginia State Capitol awaiting the appearance of President Bush, White House Event Staff approached them. The White House Event Staff were acting under the supervision of and pursuant to the instructions of Defendant Jenkins.

16. White House Event Staff told the Rank Plaintiffs that they could not remain on the State Capitol grounds while wearing their t-shirts. They ordered Plaintiffs Jeffery and Nicole Rank to remove or cover their t-shirts or to leave the Capitol grounds.

17. When Plaintiffs Jeffery and Nicole Rank refused to leave or to remove or cover their t-shirts, White House Event Staff caused them to be arrested, handcuffed, led from the Capitol grounds through a large crowd of people, jailed and charged with trespassing by local authorities.

18. The audience at the July 4, 2004, Presidential speech included many individuals who were wearing political paraphernalia expressing support for the President and his policies and who were not arrested, asked to leave, asked to cover their political messages, or otherwise harassed by law enforcement or White House Event Staff because of their expression.

4

19.    Plaintiffs Jeffery and Nicole Rank remained in custody for one to two hours. During that time they were transported, handcuffed, in a criminal transportation vehicle to the Charleston Police Department. They were kept handcuffed while they waited in a holding cell to be booked, photographed, fingerprinted, and, finally, released.

20.    The criminal charges against Plaintiffs Jeffery and Nicole Rank were subsequently dismissed.

21.    The Mayor and the City Council of Charleston publicly apologized to the Plaintiffs Jeffery and Nicole Rank for having participated in their arrest.

22.    Plaintiff Nicole Rank was temporarily suspended from her work with FEMA while the charges were still pending against her and lost income as a result.

Plaintiffs Leslie Weise and Alex Young

23.    On March 21, 2005, President Bush made a visit to Denver, Colorado, at the Wings Over the Rockies Air and Space Museum, to deliver a speech on the topic of Social Security.

24.    This was an official visit by the President. It was paid for by taxpayers. It was open to the public.

25.    On March 18, 2005, Plaintiffs Weise and Young separately obtained tickets from the office of United States Representative Bob Beauprez to attend President Bush's speech. At no time were Plaintiffs Weise and Young advised that they could not attend or that attendance was limited to persons with a viewpoint identical to that of the President.

26.    On March 21, 2005, Plaintiffs Weise and Young arrived at the event in a vehicle owned and driven by Plaintiff Weise. Plaintiff Weise's vehicle had a bumper

sticker that expressed a viewpoint that could be seen as opposing the viewpoint of the President. The bumper sticker read, "No More Blood For Oil."

27.    Plaintiffs Weise and Young wanted to listen to President Bush's views on Social Security. If the President had allowed questions from the floor, Plaintiff Young would have sought to ask a question. Plaintiffs Weise and Young had no intention of disrupting the event and did not do so at any time.

28.    As Plaintiff Weise approached the security metal detectors, with a friend, she was asked to show identification. She showed her identification to the man at the metal detector. He prohibited her and her friend from entering the event and directed them to stand aside next to a member of the White House Event Staff.

29.    Plaintiff Young's identification was checked by a different person, and Mr. Young passed the security check and proceeded to a seat.

30.    Plaintiff Weise asked the White House Event Staff member if she was on some kind of a list. He replied only that they had to wait for someone from the Secret Service to arrive.

31.    Another White House Event staff member arrived, Michael Casper, who then told Plaintiff Weise that she had been "ID'd," and that if she had any ill intentions she would be arrested. Plaintiff Weise's friend asked Mr. Casper what he meant by "ID'd." He reiterated that if they had any ill intentions they would be arrested. He told them that if they tried any "funny stuff" that they would be arrested, but that he was going to let them in.

32.    Mr. Casper issued these threats and warnings solely because of the bumper sticker on Plaintiff Weise's car and his perception that Plaintiff Weise had a viewpoint that was different from the President's.

33.    After Mr. Casper's warnings, Plaintiff Weise and her friend entered the building and proceeded to the area where the audience was seated. Some time after permitting Plaintiff Weise to enter, Mr. Casper consulted with two full-time employees of the White House Office of Presidential Advance, one of whom was the Deputy Director of that office. They jointly told Mr. Casper to require Plaintiffs Weise and Young to leave the event.

34.    A few minutes later, Mr. Casper approached Plaintiff Young. Mr. Casper told Plaintiff Young to follow him. Mr. Casper then turned toward Plaintiff Weise and shouted to her to come and that she had to leave, too. Mr. Casper placed his hand on Plaintiff Young's back and shoved him forward toward the exit. Plaintiff Weise did as ordered, and followed Mr. Casper as he pushed Plaintiff Young toward the door. Plaintiff Young repeatedly asked Mr. Casper who he was, where he was taking them, and what was going on. Mr. Casper did not answer any of Plaintiff Young's questions, but replied, "this is a private event, and you have to leave." As they approached the exit, Mr. Casper called to a woman in a dark suit to escort Plaintiffs Young and Weise out the door.

35.    Once outside, Plaintiffs Weise and Mr. Young were left with a group of men. Plaintiff Young asked one of the suited men who they were, and if they were staff. One of the men replied that he was Secret Service, and said that if staff asked them to leave, they had to leave. The man did not show Plaintiffs Young or Weise any identification. The man was wearing a lapel pin and an earpiece. Plaintiff Young asked the man if "staff" meant "Secret Service." The man repeated that, if staff asked them to leave, they had to leave.

7

36.    After the event, the Secret Service confirmed to Plaintiffs Weise and Young that they were ejected from the event because of the bumper sticker on Plaintiff Weise's vehicle.

37.    The audience at the March 21, 2005 Presidential speech included many individuals who were wearing political paraphernalia expressing support for the President and his policies and who were not arrested, asked to leave, asked to cover their political messages, or otherwise harassed by law enforcement or White House Event Staff because of their expression.

Defendant's Policies

38.    Planning for each official Presidential visit first takes place in the District of Columbia by employees of the White House Office of Presidential Advance. The Office of Presidential Advance then utilizes a combination of those employees and local White House Event Staff and volunteers.

39.    At all relevant times, the policies concerning attendance at both events were set by Defendant acting as a federal official. The policies were adopted by the Defendant in his office in the District of Columbia. They were intended to be and were applied throughout the country, including at events held in the District of Columbia, as well as at the events attended by the Plaintiffs. The ejection of the Plaintiffs was done at the direction of and pursuant to the policies adopted and implemented by the Defendant in the District of Columbia.

40.    On numerous other occasions throughout the country over the past several years, individuals have been excluded or ejected from Presidential appearances because they expressed a viewpoint disagreeing with the President. For example, in LaCrosse,

8

Wisconsin, ticket holders in line to hear the president speak had to unbutton their shirts before they could get inside. Someone who, like the Plaintiffs Jeffery and Nicole Rank here, was wearing a t-shirt critical of the President, had her ticket ripped up and was ejected by security officials. In Fargo, North Dakota, several dozen individuals were placed on a "do not admit list" of those forbidden to attend a Presidential event; most of the individuals on the list belonged to a liberal organization, and some had written letters to the editor opposing the President's policies. And in Tucson, Arizona, a student was barred from a Presidential forum on social security because he was wearing a Young Democrats t-shirt.

41. The exclusion of Plaintiffs was taken pursuant to a national policy adopted by the Defendant and the White House Office of Presidential Advance.

42. The policy is embodied in the Presidential Advance Manual created by and guiding the actions of the White House Office of Presidential Advance. That Manual provides for differential treatment of "demonstrators" or "protestors," terms plainly intended to apply to those critical of the President or his policies. More specifically, it provides ticket distribution "is vital to ... deterring potential protestors..." It provides that there should be a "designated protest area where demonstrators can be placed, preferably not in view of the event site or motorcade route." (emphasis added) As Director of the White House Office of Presidential Advance, Defendant Jenkins was responsible for the promulgation and implementation of the policy.

43. The treatment of the Plaintiffs and others around the country confirms that the Manual means "demonstrators" or "protestors" to include anyone who expressed a viewpoint different from that of the President or critical of the President or of his policies.

9

44.     Each of the Plaintiffs was treated in a manner consistent with this policy. Once White House Event Staff determined that they were expressing views critical of the President, they were excluded from the event even though none had engaged in any action that could be considered disruptive.

45.     One of the full time employees of the White House Office of Presidential Advance involved in the exclusion of Plaintiffs Weise and Young confirmed to the press that there was a national policy to exclude people who the White House believed might disrupt an event. The White House Office of Presidential Advance equates anyone who expresses disagreement with the President's views as someone who might disrupt an event.

46.     Each of the Plaintiffs suffered emotional distress and incurred other compensable harm as a result of Defendant's actions and the violation of his or her First Amendment rights.

47.     Plaintiff Nicole Rank also suffered economic harm as a result of Defendant's actions and the violation of her First Amendment rights.

## CAUSE OF ACTION

48.     Defendant's actions violated Plaintiffs' First Amendment rights to peacefully assemble, speak, and petition for redress of grievances, which rights are guaranteed by the First Amendment of the United States Constitution.

## RELIEF

Based upon the foregoing, Plaintiffs respectfully pray that this Court will:

A.     Declare that Defendant's actions that led to the exclusion of the Plaintiffs because of their speech were in violation of the First Amendment of the United States Constitution and that White House officials may not exclude people from an official

10

Presidential event because they express views that differ from that of the President, nor may they assume that such persons will be disruptive, nor may they take any action based on the assumption that a person expressing a viewpoint in opposition to the President will be disruptive.

B.    Award Plaintiffs damages for violation of their rights under the First Amendment of the United States Constitution and for the emotional harm and lost income they suffered as a result of these incidents;

C.    Grant Plaintiffs such other relief as is just and proper; and

D.    Award Plaintiffs reasonable attorneys' fees and costs.


PLAINTIFFS DEMAND A TRIAL BY JURY.


_Christopher A. Hansen / ABS_
Christopher A. Hansen
American Civil Liberties Union Foundation
125 Broad St. – 18th floor
New York, NY 10004
(212) 549-2606
Fax (212) 549-2651


_Arthur Spitzer_
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the National Capital Area
1400 20th Street NW, Suite 119
Washington DC 20036
(202) 457-0804
Fax (202) 452-1868

Counsel for Plaintiffs

June 28, 2007

07-1157
CKK

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Jeffery Rank, Nicole Rank, Leslie Weise, Alex Young | Gregory J. Jenkins |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Arthur B. Spitzer
American Civil Liberties Union
1400 20th Street, NW, Suite 119
Washington, DC 20036
202-457-0800 ext. 113

Case: 1:07-cv-01157
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 6/28/2007
Description: Civil Rights-Non-Employ.

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)

○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE an x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*    **OR**    ○ **F.** *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

USA + USAG

| O  G. *Habeas Corpus/ 2255* | O  H. *Employment Discrimination* | O  I. *FOIA/PRIVACY ACT* | O  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  K. *Labor/ERISA (non-employment)* | O  L. *Other Civil Rights (non-employment)* | O  M. *Contract* | O N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  O 2 Removed from State Court  O 3 Remanded from Appellate Court  O 4 Reinstated or Reopened  O 5 Transferred from another district (specify)  O 6 Multi district Litigation  O 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 U.S.C. § 2201. Defendant violated plaintiffs' First Amendment rights by having them ejected from public events based on their viewpoints.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** yes; unspecified amount **JURY DEMAND:** | Check YES only if demanded in complaint YES ☒  NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE  June 28, 2007    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.