IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESLIE WEISE
5587 Glendale Gulch Circle
Boulder, CO 80301

ALEX YOUNG             No. 07-cv-1157 (CKK)
817 17th St. #2005
Denver, CO 80202

       Plaintiffs,

    v.                            JURY TRIAL DEMANDED

GREGORY J. JENKINS
4094 Rivoli
Newport Beach, CA 92660

TODD W. BEYER
7717 Ridgecrest Dr.
Alexandria, VA 22308

       Defendants.

**AMENDED COMPLAINT**

(For damages and declaratory relief – violation of First Amendment rights)

1.      This is a Complaint seeking damages and declaratory relief for violation of the Plaintiffs' First Amendment rights. Defendants had the Plaintiffs removed from a public event involving the President of the United States based on the content and viewpoint of Plaintiffs' speech.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 1346. This action is authorized and instituted pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971) and 28 U.S.C. § 2201.

3. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3) because the events that form the basis for this Complaint occurred in this district and because there is no other district in which this action might otherwise be brought.

## PARTIES

4. Plaintiff Leslie Weise is a resident of the State of Colorado and was a resident of Colorado at the time of the events that are the subject of this Complaint.

5. Plaintiff Alex Young is a resident of the State of Colorado and was a resident of Colorado at the time of the events that are the subject of this Complaint.

6. Defendant Todd W. Beyer was the Director of the White House Office of Presidential Advance and a Deputy Assistant to George W. Bush, the President of the United States of America, at the time of the incident at the core of this Complaint. His office was in Washington D.C. The White House Office of Presidential Advance organizes and directs visits by the President of the United States to locations outside the White House complex in Washington D.C. Defendant Beyer now resides in Virginia. Defendant Beyer is sued in his individual capacity.

7. Defendant Gregory J. Jenkins served as the Director of the White House Office of Presidential Advance from January 15, 2003 to November 30, 2004. His office was in Washington D.C. Defendant Jenkins now resides in California. Defendant Jenkins is sued in his individual capacity.

## FACTS

8. On March 21, 2005, President Bush made a visit to Denver, Colorado, at the Wings Over the Rockies Air and Space Museum, to deliver a speech on the topic of Social Security.

9. This was an official visit by the President. It was paid for by taxpayers. It was open to the public.

10. On March 18, 2005, Plaintiffs Weise and Young separately obtained tickets from the office of United States Representative Bob Beauprez to attend President Bush's speech. At no time were Plaintiffs Weise and Young advised that they could not attend or that attendance was limited to persons with a viewpoint identical to or supportive of the President.

11. On March 21, 2005, Plaintiffs Weise and Young arrived at the event in a vehicle owned and driven by Plaintiff Weise. Plaintiff Weise's vehicle had a bumper sticker that expressed a viewpoint that could be seen as opposing the viewpoint of the President. The bumper sticker read, "No More Blood For Oil."

12. Plaintiffs Weise and Young wanted to listen to President Bush's views on Social Security. If the President had allowed questions from the floor, Plaintiff Young would have sought to ask a question. Plaintiffs Weise and Young had no intention of disrupting the event and did not do so at any time.

13. As Plaintiff Weise approached the security metal detectors with a friend, she was asked to show identification. She showed her identification to the man at the metal detector. He prohibited her and her friend from entering the event and directed them to stand aside next to a member of the White House Event Staff.

14. Plaintiff Young's identification was checked by a different person, and Mr. Young passed the security check and proceeded to a seat.

15. Plaintiff Weise asked the White House Event Staff member if she was on some kind of a list. He replied only that they had to wait for someone from the Secret Service to arrive.

16. Another White House Event Staff member arrived, Michael Casper, who told Plaintiff Weise that she had been "ID'd," and that if she had any ill intentions she would be arrested. Plaintiff Weise's friend asked Mr. Casper what he meant by "ID'd." He reiterated that if they had any ill intentions they would be arrested. He told them that if they tried any "funny stuff" that they would be arrested, but that he was going to let them in.

17. Mr. Casper issued these threats and warnings solely because of the bumper sticker on Plaintiff Weise's car and his perception that Plaintiff Weise had a viewpoint that was different from the President's.

18. After Mr. Casper's warnings, Plaintiff Weise and her friend entered the building and proceeded to the area where the audience was seated. Some time after permitting Plaintiff Weise to enter, Mr. Casper consulted with two full-time employees of the White House Office of Presidential Advance, one of whom was the Deputy Director of that office. They jointly told Mr. Casper to require Plaintiffs Weise and Young to leave the event.

19. A few minutes later, Mr. Casper approached Plaintiff Young. Mr. Casper told Plaintiff Young to follow him. Mr. Casper then turned toward Plaintiff Weise and shouted to her to come and that she had to leave, too. Mr. Casper placed his hand on Plaintiff Young's back and shoved him forward toward the exit. Plaintiff Weise did as

ordered, and followed Mr. Casper as he pushed Plaintiff Young toward the door. Plaintiff Young repeatedly asked Mr. Casper who he was, where he was taking them, and what was going on. Mr. Casper did not answer any of Plaintiff Young's questions, but replied, "this is a private event, and you have to leave." As they approached the exit, Mr. Casper called to a woman in a dark suit to escort Plaintiffs Young and Weise out the door.

20. Once outside, Plaintiffs Weise and Young were left with a group of men. Plaintiff Young asked one of the suited men who they were, and if they were staff. One of the men replied that he was Secret Service, and said that if staff asked them to leave, they had to leave. The man did not show Plaintiffs Young or Weise any identification. The man was wearing a lapel pin and an earpiece. Plaintiff Young asked the man if "staff" meant "Secret Service." The man repeated that, if staff asked them to leave, they had to leave.

21. After the event, the Secret Service confirmed to Plaintiffs Weise and Young that they were ejected from the event because of the bumper sticker on Plaintiff Weise's vehicle.

22. The audience at the March 21, 2005 Presidential speech included many individuals who were wearing political paraphernalia expressing support for the President and his policies and who were not arrested, asked to leave, asked to cover their political messages, or otherwise harassed by law enforcement or White House Event Staff because of their expression.

23. Each of the Plaintiffs was deprived of the ability to exercise his or her First Amendment rights, suffered emotional distress, and incurred other compensable harm as a result of Defendants' actions.

Defendants' Policies

24. Planning for each official Presidential visit first takes place in the District of Columbia by employees of the White House Office of Presidential Advance. The Office of Presidential Advance then utilizes a combination of those employees and local White House Event Staff and volunteers.

25. The policies concerning attendance at the event were set by Defendants acting as federal officials. The policies were adopted by the Defendants in their office in the District of Columbia. They were intended to be and were applied throughout the country, including at events held in the District of Columbia, as well as at the event attended by the Plaintiffs. The ejection of the Plaintiffs was done at the direction of and pursuant to the policies adopted and implemented by the Defendants in the District of Columbia.

26. The exclusion of Plaintiffs was taken pursuant to a national policy adopted by the Defendants and the White House Office of Presidential Advance.

27. The policy is embodied in the Presidential Advance Manual created by and guiding the actions of the White House Office of Presidential Advance. That Manual provides for differential treatment of "demonstrators" or "protestors," terms intended to apply to those critical of the President or his policies. More specifically, it provides ticket distribution "is vital to … deterring potential protestors …" It provides that there should be a "designated protest area where demonstrators can be placed, <u>preferably not in view of the event site or motorcade route.</u>" (emphasis added) While they were serving as Directors of the White House Office of Presidential Advance, Defendants were responsible for the promulgation and implementation of the policy.

28.     The treatment of the Plaintiffs and others around the country confirms that the Manual means "demonstrators" or "protestors" to include anyone who expresses or is likely to express a viewpoint different from that of the President or critical of the President or of his policies.

29.     Each of the Plaintiffs was treated in a manner consistent with this policy. Once White House Event Staff determined that they might express views critical of the President, they were excluded from the event even though neither had engaged in any action that could be considered disruptive, and there was no reason to believe that either would do so.

30.     One of the full time employees of the White House Office of Presidential Advance involved in the exclusion of Plaintiffs Weise and Young confirmed to the press that there was a national policy to exclude people who the White House believed might disrupt an event. The White House Office of Presidential Advance equates anyone who expresses disagreement with the President's views as someone who might disrupt an event.

31.     On numerous other occasions throughout the country over the past several years, individuals have been excluded or ejected from Presidential appearances because they expressed, or were thought likely to express, a viewpoint disagreeing with the President. For example, in LaCrosse, Wisconsin, ticket holders in line to hear the President speak had to unbutton their shirts before they could get inside. Someone who was wearing a t-shirt critical of the President had her ticket ripped up and was ejected by security officials. In Fargo, North Dakota, several dozen individuals were placed on a "do not admit list" of those forbidden to attend a Presidential event; most of the individuals on the list belonged to a liberal organization, and some had written letters to the editor opposing

7

the President's policies. In Tucson, Arizona, a student was barred from a Presidential forum on social security because he was wearing a Young Democrats t-shirt.

32. In Charleston, West Virginia, Jeffrey and Nicole Rank were arrested on July 4, 2004, for peacefully wearing t-shirts containing an expression of their disagreement with the policies of President Bush to the President's Fourth of July address on the grounds of the State Capitol. This speech, like the one in Denver, was open to the public and paid for by taxpayers.

33. The audience at the July 4, 2004, Presidential speech, like the audience in Denver, included many individuals who were wearing political paraphernalia expressing support for the President and his policies and who were not arrested, asked to leave, asked to cover their political messages, or otherwise harassed by law enforcement or White House Event Staff because of their expression.

## CAUSE OF ACTION

34. Defendants' actions violated Plaintiffs' First Amendment rights to peacefully assemble, speak, and petition for redress of grievances, which rights are guaranteed by the First Amendment of the United States Constitution.

## RELIEF

Based upon the foregoing, Plaintiffs respectfully pray that this Court will:

A. Declare that Defendants' actions that led to the exclusion of the Plaintiffs because of their speech or their anticipated speech were in violation of the First Amendment of the United States Constitution;

B. Declare that White House officials may not exclude people from an official Presidential event because they express views that differ from that of the President, nor

8

may they assume that such persons will be disruptive, nor may they take any action based on the assumption that a person expressing a viewpoint in opposition to the President will be disruptive;

 C. Award Plaintiffs damages for violation of their rights under the First Amendment of the United States Constitution and for the emotional harm and lost income they suffered as a result of these incidents;

 D. Grant Plaintiffs such other relief as is just and proper; and

 E. Award Plaintiffs reasonable attorneys' fees and costs.

PLAINTIFFS DEMAND A TRIAL BY JURY.

/s/ *Christopher A. Hansen*

———————————————
Christopher A. Hansen
American Civil Liberties Union Foundation
125 Broad St. – 18th floor
New York, NY 10004
(212) 549-2606
Fax (212) 549-2651

/s/ *Arthur B. Spitzer*

———————————————
Arthur B. Spitzer (D.C. Bar No. 235960)
 American Civil Liberties Union
  of the National Capital Area
1400 20th Street NW, Suite 119
Washington DC 20036
(202) 457-0804
Fax (202) 452-1868

Counsel for Plaintiffs

March 19, 2008