**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LESLIE WEISE, *et. al.*,

Plaintiffs,

v.

No. 07-cv-01157-CKK

GREGORY J. JENKINS, *et. al.*,

Defendants.

**MEMORANDUM OPPOSING DISMISSAL ON THE BASIS OF ISSUE PRECLUSION**

Plaintiffs file this memorandum in response to the Court's order of January 5, 2010, which asked the parties to brief the question whether the decision of the U.S. District Court for the District of Colorado in a case involving the same facts but different defendants had preclusive effect here.

Subsequently, the Tenth Circuit affirmed the decision of the Colorado district court on the ground that the law in question was not "clearly established" in plaintiffs' favor. *Weise v. Casper*, No. 09-1085, -- F.3d --, 2010 WL 293798 (10th Cir. Jan. 27, 2010). A copy of that decision is filed herewith as Exhibit A.

Plaintiffs ask this Court to stay this action until the Tenth Circuit decision becomes final or is reviewed en banc or by the Supreme Court. Regardless of the preclusive effect of the current opinion, staying the decision in this action will serve judicial efficiency.

If the Court wishes to consider the effect of the current Tenth Circuit opinion on this case at this juncture, however, it should conclude that issue preclusion does not apply. Rather, this Court should independently evaluate the issues raised in this case: (1) whether the defendants

violated plaintiffs' constitutional rights when they created and/or implemented policies that led to the plaintiffs being ejected from a public meeting on the basis of their viewpoint, and (2) whether D.C. Circuit precedent would have informed the defendants in this case—who acted in the District of Columbia—that their actions violated plaintiffs' clearly established constitutional rights. The Tenth Circuit did not consider either of these issues. Moreover, non-mutual issue preclusion is discretionary, and applying it in this instance would undermine, rather than support, the goal of the preclusion doctrine to promote efficiency without compromising fairness.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

This case arises from President Bush's public "town meeting" on Social Security at the Wings over the Rockies Museum on March 21, 2005. Amed. Compl. at ¶ 8 (Doc. 18). Plaintiffs Leslie Weise and Alex Young sought to listen to the President's talk and obtained tickets to the event. *Id.* at ¶ 10. But when they arrived at the event and before the talk began, employees of the White House Office of Presidential Advance ("Advance Office") directed that plaintiffs be ejected from the event based solely on a bumper sticker on Weise's car that read "No More Blood for Oil." *Id.* at ¶¶ 11-21. Plaintiffs allege that these actions were taken pursuant to a policy of excluding people from events open to the public on the basis of a viewpoint—a policy promulgated and implemented by defendants Gregory Jenkins and Todd Beyer as Directors of the Advance Office. *Id.* at ¶¶ 26-27.

Plaintiffs filed suit in the District of Colorado against Michael Casper and Jay Bob Klinkerman, the two individuals who they knew were involved in targeting and ejecting them from the meeting. *See Weise*, 2010 WL 293798 at *1-2. They later filed a second lawsuit in the

[1] The factual background regarding the presidential event is taken from the plaintiffs' amended complaint, as defendants have accepted these alleged facts for the purpose of their present motions. *See* Beyer Mot. for Summary Judgment, Doc. 33, at 2-3; Jenkins Statement of Undisputed Material Facts, Doc. 34, at 1 n.1.

same district, against Gregory Jenkins and others, while the first lawsuit was being appealed to the Tenth Circuit on the ground of qualified immunity. *See id.* These two lawsuits were eventually consolidated. *Id.* Plaintiffs then filed this suit in the District of Columbia against Mr. Jenkins and Todd Beyer, because Mr. Jenkins indicated that he would move to dismiss the Colorado suit for lack of personal jurisdiction. This Court stayed the case while the jurisdictional issue was litigated in Colorado.

On November 6, 2008, the District of Colorado entered an order dismissing Mr. Jenkins from the lawsuit for want of personal jurisdiction. *See Weise v. Casper*, Civ. No. 05-cv-02355, 2008 WL 4838682 (D. Colo. Nov. 6, 2008). In the same order, the court granted the motions to dismiss filed by Mr. Casper and Mr. Klinkerman on the alternative bases that (1) they had not violated plaintiffs' constitutional rights and (2) if they did, they were entitled to qualified immunity. *Id.* at 8.

After Mr. Jenkins was dismissed from the Colorado case, this Court lifted the stay on this lawsuit. Order of March 9, 2009. Defendant Jenkins filed a motion to dismiss or in the alternative for summary judgment, and Defendant Beyer filed a motion for summary judgment. After the briefing was completed on those motions, the Court asked the parties to brief the preclusive effect of the Colorado district court decision. Order of January 5, 2010.

Meanwhile, plaintiffs had appealed the Colorado district court ruling. As noted above, the Tenth Circuit issued its decision on January 27, 2010. It did not reach the merits of the constitutional question but affirmed the district court on the basis of qualified immunity only.

## II. ARGUMENT

This Court should either (A) stay this proceeding until the Tenth Circuit decision becomes final or is reviewed en banc or by the Supreme Court, (B) hold that the Tenth Circuit

decision is not preclusive because it did not consider the issues that are before the Court in this case, or (C) decline to apply preclusion because its application in this case would undermine the goals of preclusion.

**A. The Court Should Stay This Proceeding Pending Plaintiffs' Petition for Review of the Tenth Circuit Decision.**

Although plaintiffs believe that the Tenth Circuit decision does not have and should not have preclusive effect, *see infra* Parts II. A & B, the best course of action for this Court would be to stay these proceedings pending final action on plaintiffs' petition for en banc review by the Tenth Circuit and/or their petition for certiorari to the Supreme Court. If either of those courts reverses the Tenth Circuit, the current opinion will obviously cease to have any preclusive effect. *See, e.g., Wheeler v. John Deere Co*., 935 F. 2d 1090, 1096 (10th Cir. 1991) ("A judgment reversed by a higher court is 'without any validity, force or effect, and ought never to have existed'") (quoting *Butler v. Eaton*, 141 U.S. 240, 244 (1891) (reversing second judgment where it was based entirely on the preclusive effect of a prior judgment later reversed)).

Staying this proceeding has two advantages: (1) it minimizes the expenditure of judicial resources required if the Court were to resolve the preclusion issue unfavorably for the plaintiffs, and then the plaintiffs had to move to reopen the case or appeal should the Tenth Circuit decision be reversed, and (2) it protects plaintiffs from the unnecessary risk of being barred from reopening the case based on the statute of limitations. *See Martin v. Malhoyt*, 830 F.2d 237, 264-65 (D.C. Cir. 1987) (recommending deferred consideration of the preclusion question as a solution to avoiding the risk of denying relief on the basis of a judgment that is subsequently overturned); *Bailey v. Ness*, 733 F.2d 279, 282-83 (3d Cir. 1984) (holding that the district court should have stayed the case, rather than dismissed it, given ambiguity in the preclusive effect of

the judgment and possibility of statute of limitations problems). Courts pay particular attention to ensuring that premature dismissals do not prejudice § 1983 plaintiffs by raising statute of limitations problems. *See Bailey*, 733 F.2d at 282-83; *Parkhurst v. Wyoming*, 641 F.2d 775, 777 (10th Cir. 1981); *Seltzer v. Ashcroft*, 675 F.2d 184, 185 (8th Cir. 1982) (per curiam), *cert. denied*, 464 U.S. 860 (1983). That concern is triggered here, as a dismissal would prejudice plaintiffs' case because the statute of limitations has expired.[2] By contrast, a stay will have no prejudicial effect on the defendants.

Given the concerns of judicial efficiency and the possibility of prejudice to plaintiffs here, plaintiffs ask that the Court stay these proceedings until the decision in the Colorado case becomes final.

**B. The Tenth Circuit Decision Does Not Have Preclusive Effect Because It Did Not Decide the Issues Before This Court.**

If the Court decides to reach the question of issue preclusion now, it should decide that the Tenth Circuit decision does not have preclusive effect. In response to defendants' motions to dismiss and for summary judgment before this Court, plaintiffs established that, on the available facts, the defendants violated their First Amendment rights, and that those rights were clearly established in the District of Columbia Circuit. The Tenth Circuit decision does not have preclusive effect on either issue because: (1) the Circuit passed over the issue of whether the plaintiffs' constitutional rights were violated, and (2) the Circuit's decision on the qualified immunity issue relied on the absence of Tenth Circuit law on point, whereas the same question in this Court would be resolved by reference to clearly established D.C. Circuit law.

[2] Plaintiffs' claim accrued on March 21, 2005. The statute of limitations for § 1983 claims is three years in the District of Columbia. *See Singletary v. District of Columbia*, 351 F.3d 519, 529 n.11 (D.C. Cir. 2003).

1. Plaintiffs Are Not Precluded From Arguing That Their Constitutional Rights Were Violated Because the Tenth Circuit Did Not Affirm the District Court's Ruling on That Issue.

The Tenth Circuit bypassed the first prong of the qualified immunity inquiry—whether a constitutional violation occurred—and instead decided the case solely on the basis of the second prong—whether the violated right was "clearly established" at the time of the violation. *See Weise*, 2010 WL 293798, at *3. Because the Tenth Circuit did not affirm the district court's alternative holding on the first prong, plaintiffs are not precluded from arguing the constitutional violation issue before this Court.

"It is a well-established principle of federal law that if an appellate court considers only one of the lower court's alternative bases for its holding, affirming the judgment without reaching the alternative bases, only the basis that is actually considered can have any preclusive effect on subsequent litigation." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 754 (2d Cir. 1996); *Stebbins v. Keystone Ins. Co.*, 481 F.2d 501, 507 n.13 (D.C. Cir. 1973) ("[W]hen a judgment specifically rested on alternative grounds is appealed, only those issues expressly considered by the appellate court can be used, as the basis for a plea of collateral estoppel"); 18 Charles Alan Wright *et. al.*, Federal Practice & Procedure § 4421 (2d ed. 2009). This is because the appellate court's decision to pass over a district court decision on an issue shows that the resolution of that issue was not necessary to the judgment, and "[i]ssue preclusion attaches only to determinations that were necessary to support the judgment entered in the first action." *Id.*; *see Schiro v. Farley*, 510 U.S. 222, 233 (1994) (citing Wright & Miller for the same proposition); *Otherson v. Dept. of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (setting forth three elements of preclusion, including whether issue was "actually and *necessarily*

determined" (emphasis added)); *Salovaara v. Eckert*, 222 F.3d 19, 33-34 n.10 (2nd Cir. 2000) (stating that where the appellate court did not discuss an alternative ground for judgment, "it cannot be said that the issue in question was actually and necessarily decided in the prior appeal" (internal quotations omitted)). This requirement exists so that preclusive effect is not given to unnecessary decisions that "may not have been afforded the careful deliberation and analysis [that] normally applies to essential issues," and that is "not subject to the important safeguard as to its correctness, to wit: a contested review on appeal." *Halpern v. Schwartz*, 426 F.2d 102, 105 (2d Cir. 1970) (holding that preclusive effect should not be given to alternative determinations); Restatement (Second) of Judgments § 27 cmt. i. (1982); Wright, *supra*, at § 4421.

The Colorado district court's discussion of the constitutional merits of plaintiffs' claim was unnecessary to its judgment, and the concern over lack of careful deliberation and lack of appeal rights has full force here: plaintiffs dispute the correctness of the district court's decision on that issue, but were unable to obtain appellate review of it. The Tenth Circuit instead bypassed the question and affirmed the district court on the alternative basis of the second prong of the qualified immunity inquiry. For this reason, the Tenth Circuit decision does not preclude plaintiffs from arguing that their rights were violated when they were ejected from a public meeting based on viewpoint discriminatory policies promulgated by the defendants.

2. Plaintiffs Are Not Precluded From Arguing That Plaintiffs' Rights Were Clearly Established In This Circuit.

The issue that the Tenth Circuit did decide—whether plaintiffs' rights were clearly established—relied on the absence of relevant Tenth Circuit law that would have informed a reasonable defendant in that circuit that their conduct was unconstitutional. Here, by contrast, the relevant legal standard is whether there is D.C. Circuit law that clearly established plaintiffs' rights.

"[I]ssue preclusion does not foreclose litigation of an issue when different legal standards apply in the second action." *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989). This is because issue preclusion "applies only to issues that are identical in both actions," and "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." *Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam). Therefore, the fact that the issue is labeled the same has no significance; if, for example, the legal analysis in the second lawsuit focuses on the consideration of factors different from that in the first lawsuit, there is no preclusion. *See Mayeske v. Int'l Ass'n of Fire Fighters*, 905 F.2d 1548, 1552-53 (D.C. Cir. 1990) (holding that the NLRB determination as to the identity of the employer was not preclusive as to whether plaintiff was an "individual employed by an employer" under ERISA, because that ERISA question involves a broader test), *cert. denied*, 498 U.S. 940 (1990); *accord Levy v. Kosher Overseers Ass'n of America*, 104 F.3d 38, 41-43 (2d Cir. 1997) (holding that the decision of Trademark Trial and Appeal Board denying registration on ground of "likelihood of confusion" does not have preclusive effect on the "likelihood of confusion" issue in district court, where a broader set of factors are considered).

The legal analysis of the second prong of the qualified immunity analysis in this case involves a factor different from that in the Colorado suit. The Tenth Circuit held that the plaintiffs' rights were not clearly established *in the Tenth Circuit* because it found no Supreme Court decision on point, no Tenth Circuit decision on point, and no clearly established weight of authority from other circuits, indicating that defendants' actions were unconstitutional. *See Weise*, 2010 WL 293798 at *3. The Tenth Circuit applied that legal standard because it was evaluating whether the defendants in that action—who were acting in Colorado—were entitled to

qualified immunity under the law of that circuit. The issue in this case against the current defendants—who were acting in the District of Columbia—is whether plaintiffs' rights were clearly established under *D.C. Circuit law*. This Court's analysis must focus on the law of the jurisdiction in which the defendants acted because qualified immunity is about fairness to the law enforcement officers: it "operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Hope v. Peltzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). For an officer to be on notice, "in the light of pre-existing law the unlawfulness must be apparent." *Hope*, 536 U.S. at 739 (internal quotation marks omitted). On the one hand, pre-existing law from the circuit court in which the officer acts is sufficient to put the officers on notice of unconstitutionality. *See, e.g.*, *id.* at 742-43; *Moore v. Hartman*, 388 F.3d 871, 885 (DC. Cir. 2004), *rev'd on other grounds*, 547 U.S. 250 (2006). On the other hand, officers are not responsible for knowing the law of other jurisdictions unless there is a "consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

In fact, in its focus on the fairness to the defendants, the qualified immunity inquiry is reminiscent of the due process inquiry for personal jurisdiction and choice of law. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981) ("In order to ensure that the choice of law is neither arbitrary nor fundamentally unfair, the Court has invalidated the choice of law of a State which has had no significant contact or significant aggregation of contacts, creating state interests, with the parties and the occurrence or transaction"); *id.* 318 n.23 (noting that the choice of law inquiry and the personal jurisdiction inquiry are "often closely related and to a substantial degree depend upon similar considerations," although they might in some cases lead to divergent results). If it offends traditional notions of fair play and substantial justice to extend the personal jurisdiction

of the Colorado district court to defendant Jenkins because having enacted a policy in D.C. he could not reasonably anticipate being haled into court there, *see Weise v. Casper*, No. 05-cv-02355, *3, similar concerns for fairness should also weigh against holding him responsible for knowing Colorado case law for qualified immunity purposes. But just as it is fair to extend personal jurisdiction over the two defendants in the D.C. district court, it is perfectly fair to hold them responsible for knowing D.C. circuit law.

For these reasons, the question before this Court is whether there is a Supreme Court case on point, a *D.C. Circuit case on point*, or a consensus of cases from other circuits that notified defendants Jenkens and Beyer of the unconstitutionality of their actions. *See Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008); *Zieper v. Reno*, No. 00 CIV. 5594, 2002 WL 1380003, *6, 4 n.6 (S.D.N.Y. June 26, 2002) (resolving the qualified immunity question by reference to Second Circuit law where case was transferred from New Jersey District Court because of lack of personal jurisdiction over one of the defendants, although also noting that the Court would reach the same result regardless of the approach taken). Even if there were no Tenth Circuit law on this issue, or even no law in any other circuit, it makes no difference in this suit because one case on point from the D.C. Circuit is sufficient to make the law clearly established. *See Moore*, 388 F.3d at 885. There is a case on point in the D.C. Circuit: *Mahoney v. Babbitt*, 105 F.3d 1452 (D.C. Cir. 1997). This Court should thus evaluate whether *Mahoney*, as well as *Sanjour v. E.P.A.*, 56 F.3d 85, 96 (D.C. Cir. 1995), clearly established the principle in this circuit that government officials cannot engage in the kind of conduct involved in this case.[3]

[3] For these same reasons, Defendant Jenkins is incorrect that the mere existence of the Colorado decision shows that the law is not clear and requires the dismissal of this action based on qualified immunity. The Tenth Circuit opinion, which is wholly incorrect in any event, *see infra* Part II.C, does not undermine the clearly established law of this circuit. *See Moore*, 388 F.3d at 885. Moreover, Defendant Jenkins is incorrect that differing views of judges in the Colorado

### C. In Any Event, the Court Should Not Apply Non-Mutual Preclusion Here Because It Would Undermine Fairness and the Development of Constitutional Law.

This Court should deny preclusion when, as here, defendants who did not take part in the first suit attempt to invoke the preclusion bar against plaintiffs' subsequent suit in a way that contravenes the Court's "sense of justice and equity." *Blonder-Tongue Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 334 (1971); 18 Wright, *et. al.*, *supra*, § 4465 ("[T]here is discretion to deny nonmutual preclusion when preclusion would not be fair or in order to achieve justice and equity."). The type of issue preclusion that might be invoked here, called non-mutual preclusion or non-mutual collateral estoppel,[4] poses a great risk of inequity because the defendants may use it to preclude plaintiffs' suit, but if plaintiffs are victorious, they cannot use it against the defendants, *Pharmaceutical Care Mgmt Ass'n v. District of Columbia*, 522 F.3d 443, 446 (D.C. Cir. 2008). It should apply only where "the goal of limiting relitigation of issues . . . can be achieved without compromising fairness in particular cases." *Blonder-*

---

case shows that the constitutional right is not clearly established. The Supreme Court recently held that "the fact that a single judge, or even a group of judges, disagrees about the contours of a right does not automatically render the law unclear if we have been clear." *Safford Unified School Dist. No. 1 v. Redding*, 129 S. Ct. 2633, 2644 (2009); *see also Hope*, 536 U.S. at 755-58 (holding that shackling a prisoner to a hitching post in the hot sun was unconstitutional under clearly established law, despite the dissent's argument that lower courts had found no constitutional violation in other similar circumstances); *Johnson*, 528 F.3d at 973 (reversing the district court's grant of summary judgment to defendant and holding that, viewing the facts in light most favorable to the nonmoving party, plaintiff's clearly established rights were violated).

[4] Specifically, the preclusion doctrine at issue in this case is defensive non-mutual collateral estoppel, which "occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Defendants Jenkins and Beyer were neither defendants nor in privity with the defendants in the earlier lawsuit. *See Novak v. World Bank*, 703 F.2d 1305, 1310 n.11 (D.C. Cir. 1983) ("In most situations where privity has been held to exist, one or more of the following three relationships between the privies are present: concurrent relationship to the same right of property; successive relationship to the same right of property; or representation of the interests of the same person." (internal quotation marks omitted)).

*Tongue*, 402 U.S. at 328, 334; *cf. Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979) ("We have concluded that the preferable approach for dealing with [the problems of efficiency and fairness] in federal courts is not to preclude the use of offensive collateral estoppels, but to grant trial courts broad discretion to determine when it should be applied.").[5]

In this case, considerations of "justice and equality" weigh against preclusion: (1) because plaintiffs did not seek to create multiple lawsuits in differing jurisdictions and take advantage of the result, (2) because the Tenth Circuit decision was on a pure question of law and treating it as conclusive would inappropriately foreclose this Court from performing its own adjudicatory function, and (3) because that decision does not support the assumption that the prior court correctly determined the issue. Under these circumstances, applying collateral estoppel would turn the goal of the preclusion doctrine on its head.

First, according preclusive effect to the Tenth Circuit decision would not serve the ultimate concern of the preclusion doctrine to discourage litigants' ability to engage in gamesmanship. *Blonder-Tongue*, 402 U.S. at 328; *see also Parklane Hosiery*, 429 U.S. at 330 (holding that the preclusion law must not be applied in a way that encourages parties to adopt a "'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment."). The Supreme Court abandoned the traditional requirement of mutuality in *Blonder-Tongue* because "[p]ermitting repeated litigation of the same issue [by plaintiffs] as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table

[5] *Parklane Hosiery* involved the "offensive use of collateral estoppel," which "occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co.*, 439 U.S. at 326 n.4. The Court has approvingly cited to the Restatement (Second) of Judgment's approach that "there is no intrinsic difference between 'offensive' as distinct from 'defensive' issue preclusion, although a stronger showing that the prior opportunity to litigate was adequate may be required in the former situation than the latter." *Id.* at 331 n.16 (citing Restatement (Second) of Judgments, § 88, Reporter's Note, at 99)).

or a lack of discipline and of disinterestedness on the part of the lower courts." *Id.* at 329 (internal quotation marks omitted). Here, however, plaintiffs never sought to game the courts by filing multiple lawsuits. In fact, plaintiffs attempted to bring suit against defendant Jenkins in the Colorado district court, but he avoided the suit by invoking the personal jurisdiction defense. *See Weise v. Casper*, 2008 WL 4838682, at *3.

Second, preclusion applies with less force to pure questions of law, particularly for non-mutual preclusion, because the interest of the court in "performing its function of developing the law" outweighs any gains in efficiency. *Pharmaceutical Care Mgt. Ass'n*, 522 F.3d at 446-47; *United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993); Restatement (Second) of Judgments § 29(7), cmt. i. For this reason, "[i]n a non-mutual case," the D.C. Circuit has held that "an issue is *not* precluded if it is one of law and treating it as conclusively determined would inappropriately foreclose opportunities for obtaining reconsideration of the legal rule upon which it was based." *Pharmaceutical Care Management Ass'n*, 522 F.3d at 446-47 (internal quotation marks omitted, emphasis in original).

The Tenth Circuit opinion in *Weise* meets both requirements for the pure question of law exception to apply in the D.C. Circuit. It presents a conclusion on a pure issue of law because the Tenth Circuit affirmed a dismissal at the motion to dismiss stage. "The grant of a motion to dismiss for failure to state a claim" is "a pure question of law," as all facts are taken to be true. *Danielsen v. Burnside-Ott Aviation Training Center*, 941 F.2d 1220, 1230 (D.C. Cir. 1991); *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007) ("Courts have emphasized that whether a § 1983 defendant's conduct violates the 'clearly established' constitutional rights of the plaintiff is a pure question of law that must be resolved by the court.").

Moreover, treating this issue of law—whether the government can constitutionally exclude individuals from public events on the basis of their viewpoints—as conclusively determined by the Tenth Circuit opinion would have all the negative consequences identified in *Pharmaceutical Care Management Association*: it would "inappropriately foreclose opportunities for obtaining reconsideration of the legal rule," "prevent the court from performing its function of developing the law," and "freeze the development of the law in an area of substantial public interest." 522 F.3d at 446-47 (internal quotation marks omitted). This is particularly true because the Tenth Circuit did not even reach the constitutional question, thereby neglecting "the development of constitutional precedent," *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (recognizing the value of the two-step *Saucier* procedure in developing constitutional law), and creating the danger that other courts would rely on its decision to find the law not clearly established. This Court should not add to this neglect, particularly in light of the national importance of this question in recent years. *See, e.g.*, *McCabe v. Mccaulay*, 551 F. Supp. 2d 771 (N.D. Iowa 2007); *Rank v. Hamm*, 2007 WL 894565 (S.D.W.Va. Mar. 21, 2007); *see also* Kimberly Albrecht-Taylor, Note, *Giving Dissenters Back Their Rights: How the White House Presidential Advance Manual Changes the First Amendment and Standing Debates*, 17 Wm. & Mary Bill Rts. J. 539 (2008).[6]

Finally, the Tenth Circuit decision represents one of the "relatively rare instances" where the prior court "failed to grasp the . . . subject matter and issues in suit." *Blonder-Tongue*, 402 U.S. at 333. Preclusion is "justified not merely as avoiding further costs of litigation but also by

[6] The importance of reconsideration of a legal rule "is especially pertinent when there is a difference in the forums in which the two actions are to be determined, as when . . . the issue was determined in an appellate court whose jurisdiction is coordinate with . . . that of the appellate court to which the second action can be taken; or when the issue is of general interest and has not been resolved by the highest appellate court that can resolve it." Restatement (Second) of Judgments § 29(7), cmt. i.

underlying confidence that the result reached is substantially correct." Restatement (Second) of Judgment § 29, cmt. f. The Tenth Circuit decision hardly instills confidence. It is plainly inconsistent with its own circuit precedent as well as long-established principles of First Amendment law in the Supreme Court and in every circuit court prohibiting the government from engaging in viewpoint discrimination in any public or nonpublic forum. *See, e.g.*, *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819 (1995) (holding that denial of funding to a student organization on the basis of viewpoint violated the First Amendment); *City of Madison, Joint Sch. Dist. No. 8 v. Wisc. Employment Relations Comm'n*, 429 U.S. 167 (1976) (holding that state cannot require school board to discriminate against speakers at a public meeting on the basis of content of speech); *Mesa v. White*, 197 F.3d 1041, 1047 (10th Cir. 1999) ("[G]overnment bears a particularly heavy burden in justifying viewpoint-based restrictions in designated public forums"); *Mahoney*, 105 F.3d 1452 (concluding that the government cannot exclude people from standing along the Clinton Inaugural Parade route based on signs critical of the President's policies).

The Tenth Circuit attempted to distinguish this long line of cases because of the nature of the speech or the speaker, the nature of the forum, and plaintiffs' framing of the legal theory, *see Weise*, 2010 WL 293798, at *4-6, but all three of these purported distinctions betray a fundamental misunderstanding of the plaintiffs' case and of the First Amendment, as Judge Holloway's persuasive dissent showed. First, the plaintiffs have "bas[ed] their cause of action on the exercise of the First Amendment rights embodied in Ms. Weise's bumper sticker," *id.* at *11 (Holloway, J., dissenting), which is indisputably political speech "that is central to the meaning and purpose of the First Amendment." *Citizens United v. Fed. Election Comm'n*, -- S. Ct. --, 2010 WL 183856, *13 (2010). Second, the plaintiffs have alleged that they were excluded from

an event that was open to the public, and it is well-established that the government cannot engage in viewpoint discrimination when it opens a forum to its citizens, regardless of whether it is a "public forum" or a "nonpublic forum" under First Amendment law. *See Cornelius v. NAACP*, 473 U.S. 788, 806 (1985); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). Finally, plaintiffs' case is no different whether it is viewed as an unconstitutional exclusion case or a retaliation case. Regardless of whether defendants ejected plaintiffs for their viewpoint, or retaliated against them for their viewpoint, they violated plaintiffs' clearly established constitutional rights.

Issue preclusion based on the Tenth Circuit opinion would work particular inequity to the plaintiffs here and to the development of constitutional law. The Court should therefore exercise its discretion not to apply non-mutual issue preclusion.

## III. CONCLUSION

Plaintiffs ask that the Court stay these proceedings until the Tenth Circuit's decision becomes final or is reviewed en banc or by the Supreme Court. Such a stay would conserve judicial resources and protect plaintiffs from prejudice, while not causing any harm to the defendants. If the Court decides to reach the issue of preclusion at this juncture, however, it should conclude for the reasons set forth above that the Tenth Circuit decision does not have and should not have any preclusive effect on this lawsuit.

February 8, 2010

Respectfully submitted,

/s/ *Arthur B. Spitzer*

____________________

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
of the National Capital Area

1400 20th Street NW, Suite 119
Washington DC 20036
(202) 457-0804
Fax (202) 452-1868
artspitzer@aol.com

Christopher A. Hansen
Catherine Crump
Mariko Hirose
American Civil Liberties Union
125 Broad Street, 18th floor
New York City, NY 10004
(212) 549-2606
chansen@aclu.org
ccrump@aclu.org
mhirose@aclu.org

Mark Silverstein
American Civil Liberties Union
Foundation of Colorado
400 Corona Street
Denver, Colorado 80218-3915
(303) 777-5482
Msilver2@worldnet.att.net

Martha M. Tierney
Jerremy M. Ramp
Kelly Garnsey Hubbell + Lass LLC
1441 Eighteenth Street, Suite 300
Denver, Colorado 80202-1255
(303) 296-9412
mtierney@kghllaw.com
jramp@kghllaw.com
In cooperation with the American
Civil Liberties Union Foundation of
Colorado

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Memorandum Opposing Dismissal on the Basis of Issue Preclusion was served by first-class mail, postage prepaid, upon:

Marc S. Raspanti, Esq.
Sarah R. Lavelle, Esq.
PIETRAGALLO GORDON ALFANO BOSICK & RASPANTI LLP
1818 Market Street
Suite 3402
Philadelphia, PA 19103

this 8th day of February, 2010. All other parties have been served via the Court's electronic filing system.

*/s/ Catherine Crump*
_________________________
Catherine Crump